May it please the court, my name is Ena Lipkin on behalf of the petitioners Tirath Singh and his wife. This is a review of the decision of the Board of Immigration Appeals regarding the petitioner's application for asylum. The central issue here is does he have a well-founded fear of persecution that prevents him from safely relocating within India. The petitioner contends that the government was completely wrong in arguing that he would not be subject to targeting by the police countrywide. The judge pointed very briefly to the record saying that the government's supporting documents showed that because he is not a militant and because Hindi and Punjabi are very similar closely related languages, he could freely relocate. No one would be interested in him and there are no tenant landlord registration laws. But that is completely opposite to what is contained in the record. First of all, the judge found the petitioner to be credible, so that is not an issue. He credibly testified to three illegal arrests, during which he was repeatedly accused of being a Khalistani, aka a militant, someone who wants a separate Sikh state. Therefore, if he did try to relocate and he tried to rent an apartment or get a job, according to the landlord-tenant laws of which many articles were submitted in the record in Exhibit 6, he would be someone whose past arrest history would then become known to the local police of wherever it is he relocated to. And that information would be relayed back to the police in the Punjab, which would then reignite an interest in arresting him in order to squelch his supposed anti-national activities in support of the Sharmani Akali Dalman party, which he advocated for, and which he stated in the record he continues to be a member of, and which he will continue to advocate for if he returns to India. Therefore, the specter of being rearrested is there, and he would be accepted. Well, I think India is a big country, right? Oh, yeah. A very big country with lots of people, and it sounded to me like the IJ was suggesting that if your client went off in a far corner somewhere, he'd be fine. Now, the real question is that may be true. I mean, who knows? I mean, it is a big country. And what weight or what importance do we place on his ability to earn a living there, his ability – because Well, Your Honor, the petitioner is a farmer, so certainly he needs to – if he wanted to continue with his past occupation, he'd need to find another area in which he could farm. You've got to get him a new farm, too. Yeah, which costs money. But I don't think the law requires that he find some little corner and live in hiding. He should be able to live openly. As an analogy, if we had somebody who was in some Middle Eastern country, unnamed Middle Eastern country, and they were clearly being subjected to the same kind of harassment, and if we said they found – the IJ found your client credible. He was beaten, and he was – I don't know whether it would rise to the level of torture, but it certainly sounded like it to me. In any event, does that mean that if he could be relocated to the middle of the Arabian desert somewhere, and therefore he wouldn't be molested out there, that would be okay? I think not. Right. Well, geographically, I mean, you know, we're still in India, and no, I don't think that – No, I'm using an analogy. I mean, if we had a Middle Eastern country in the same situation, it has to be someplace where the person can reasonably live. Right. Openly, and not in hiding. And he has suggested in his testimony that he couldn't live openly because he'd want to participate. He has a right, if India is democratic, then he should be given that right to participate openly in political activities that, even if in opposition to the government, as long as conducted peacefully, he should be allowed to participate. And he wouldn't be able to do that if you stuck him in a remote area, hoping that no one will locate him there. And I think that the board was incorrect in affirming the judge's opinion that the police would not be interested in locating him because tenant-landlord registration systems were not enforced. The background documents which were indicated in the brief, you could look at pages 377, 386, 422, 424, and the record is examples, many other articles showing that landlord-tenant verification systems are in place. And yes, he was not a militant, but he was accused of being one. He was called an anti-national, so why wouldn't he then be a person of interest? As far as his cat claim, he did credibly testify to torture, beatings by batons, electric shocks, being deprived of food certainly rose to the level, the requisite level, to establish torture. And therefore, he does have at least a 50% chance of being subjected to the same sort of mistreatment. Well, I'm not sure he's got a 50% chance of doing that, and I'm not sure 50% is what's necessarily going to be determinative of the ultimate outcome here. Let me come back to asylum and relocation. Obviously, your client would prefer asylum to cat relief. Yes, sir. The rule is not only that he needs to be able to relocate to a place that is safe, but that it be reasonable for him to do so. And there's a regulation that describes some of the factors that would go to reasonableness, such as age, gender, health, social, familial ties. It's not listed there, but I think language would be one of them. I think our case law would support that. He obviously speaks Punjabi as his native tongue, speaks some Hindi. I gather from what went on during the hearing that he speaks pretty good English because he seemed to have understood and sometimes answered questions before the translation came. But he moves away from family. Apparently, his family is all in the Punjab, and the Punjab is the place from which he would be relocating. Could you help me more on this question of reasonableness, not now safety, which we've so far really been focusing on? Absolutely, Your Honor. Well, the respondent is now in his mid-40s, as is his wife. As stated before, his education was not a higher education. I'm not sure that the record shows he completed high school or the equivalent of high school. He does know some Hindi, but not enough to necessarily get a job outside of farming. I know the record is indeterminate on that question. Right. Regarding his understanding of English, it is also very limited, Your Honor. He noted on his assignment application he's not fluent in English. A lack of fluency would definitely limit him in his abilities to perhaps get employment. But I think what's determinative is not any of that. What's determinative is the fact that he stated he wants to continue participating in the Sharmani Akali Dalman. How is he going to do that if he's on the radar of the police who want to stop that sort of oppositional, what they view as oppositional activity? So he can't really practice his political beliefs anywhere within the country. Well, counsel, the paradox of that is if he's here, he's not exactly practicing it either effectively, except maybe by long distance. And number two, of course, your argument about him being missing family and being in another part of India where his family is, and his things are always a paradox in these cases. When they say, well, they want to relocate him to a part of wherever where the family isn't. Well, the family isn't here unless he does have family here. I don't know. That's not in the record. No, Your Honor. But the crux of the claim is that he would not be allowed to state his name, Akali Dalman, in India. And from here in the United States, he could support that party in a variety of ways, monetarily, speaking on behalf of the community here, or whatnot. We can't speculate as to what that would be. All we know is he can't do so freely there. I might save half a minute. As long as he does it legally, he can do it here. I'll save half a minute. Okay. Thank you. Let's hear from the government, and we will give you a chance to respond. Good morning. May it please the Court. Arthur Rabin on behalf of the Attorney General. The Court should uphold the agency's decision to deny asylum in this case, because substantial record evidence in this record supports the agency's finding in regards to relocation and the lack of humanitarian asylum eligibility. Turning to the first issue... He had in the record evidence that even after he left, the police came to the house where he was living, twice looking for him. And it seems to me, and they found him credible, so we don't have one of those which is the usual problem. So, how can your position be tenable that there's no reasonable fear here? Your Honor, there has been... Okay, so procedurally, there has been a finding by the agency that he has shown past persecution. That, then, arises a well-founded fear which can be rebutted, and we submit has been rebutted. Well, they chased after him even after he left. They're still looking for him. Okay, the evidence is they came to his house a couple of times. What the government's position is, and what the agency's position was, is that these were local Punjabi police. So the agency... You don't expect the Delhi police to come to the Punjab to do it, do you? Well, I guess I'm trying to make a distinction, Your Honor, between local police and the national police, that is, the federal police that have India-wide jurisdiction. And the reason I make that distinction is because in the record, there is overwhelming evidence that shows country report after country report after country report that make a distinction between these kind of local police and the federal police, and high-profile individuals, and just local general members who may transgress against local police. And the reason that the agency said we rebutted the presumption of well-founded fear is because he is not a militant. He specifically said, I have never been a militant. I have never committed any terrorist acts. In fact, I... Well, he's got to say that in order to be entitled to asylum, because if he's a terrorist, India can get at him legally. Yes, they could, Your Honor, but I guess what he's saying is he's never committed any violent acts. No weapons were ever found on him. That is, you know, when he was picked up on these three little incidents, each of them... Yes, but what I'm after here is you're almost producing a null set in the sense of who can safely or reasonably relocate, because anyone who uses explosives or commits terrorist acts may legitimately be detained and punished by the Indian authorities. And you're saying, well, he's not that, and therefore, he can reasonably relocate. So that sounds to me as though anyone who is entitled to asylum because of his sick-related political activities can relocate. Tell me why you've not produced a null set for me. Okay, because it's not saying that he has to admit to having committed any of these acts. What I'm saying, he's never been accused by the Indian police of ever committing any of these acts. That is, they're not chasing him as a terrorist, a militant, a Sikh separatist, somebody that they think is actually going out and going to try and obtain, create the Khalistan, the Sikh separatist state. What happened is he's a member of a legitimate democratic party in India. And as part of his activities, as a general member only, he's not employed by that party. He's not a high-level member. He never spoke at rallies. He's not one of these people that goes out and puts on these events. Instead, he's just a guy who attends rallies. And he's been picked up and badly treated three times for doing precisely that. So what happened was, one incident was in 1998, the next one was eight years later, in 2008, and the other one was eight months after that. Were those all in the Punjab? This was all in the Punjab, in his hometown. I thought one was in Delhi. No, Your Honor. One of the rallies was in Delhi, but after he returned back to his hometown, that's when he was picked up. But punished for having done something in Delhi? Yes, Your Honor. That was going to, he said, 1998, protesting against nuclear. Doesn't it show some nexus between the national police and the local police? So he's doing something in Delhi, they spot him in Delhi, they tell the people in Punjab, and then they go pick him up and beat the heck out of him? There's no evidence of that, Your Honor. Well, I think there is some evidence of that. I mean, how in the world would, look, somebody does something in Kansas City, and the police pick him up in Seattle, okay? I mean, one would assume the Seattle police were in Kansas City. True, Your Honor, but that particular incident happened in 1998. So his last incident was, he was picked up by a completely different police. So to say that the two incidents are connected eight years apart is a stretch. What I am saying is that here, he is not a high-profile individual who could not relocate, because the country record evidence shows that these low-level individual members who are picked up by police and harassed and mistreated can relocate within India. And we submit it is reasonable for them to do so instead of coming all the way to the United States. And in this particular case, the immigration judge looked at numerous specific factors, including employment, his language skills, his housing, and things like that, and determined it was not only safe, but reasonable for him to relocate within India first, without having to come all the way to the United States or some other country and submit for asylum. What's the evidence in the record with respect to whether he has any family outside the Punjab? There is none. The only thing we have is his father who has remained in the Punjab. Well, I think the evidence in the record is, insofar as we have evidence, that he does not have family outside the Punjab. Is that right? That is correct, Your Honor. But the evidence also shows that there are Sikh communities in the millions in India, in at least more than half of the states, Indian states. I think the record actually has a breakdown of each state and how many Sikhs in the millions live in those other states outside the Punjab. So to say that he cannot relocate somewhere with his wife, just like he has done here, where he has no family, and say that's unreasonable for him to do that, we would say that's not supported by the evidence. Counsel, I was going to ask you if you could just refresh my memory, as I seem to recall seeing this in some other records, other cases, as to the current status and treatment of Sikhs in India and in the country as a whole. Well, Your Honor, we have our country reports that date back to the time of these incidents, the time of these hearings. If you would like, I can get you the latest reports. But as of now, at least back in 2008, India had a Sikh Prime Minister. There were Sikh Indian parties which were competitive in Indian elections. The background country reports specifically say that Sikhs are not individually targeted in India. And if there was such targeting as late as 2008-2009, some of these reports, that the press would have reported this if they were just being mistreated because they were Sikhs. It seems like a lot of the turmoil that's going on in the Punjab, especially in the last few days, Your Honor, if you've been reading the news, is more related to riots and violence that's going on over religious incidents. Nothing to do with separatist movement and suppression of it, which is what most of the country reports indicate was occurring back in the 1990s and up until the early 2000s. There was a Sikh Prime Minister, right? Yes, Your Honor. When was that period? 2008, Your Honor. What's the current status in terms of Sikh power in the national political structure? How are they currently situated? I don't know, Your Honor. I could give you the latest country report. I could supplementally cite that and submit it to the court as a citation. We can see that in the record, thanks. Yes, Your Honor. Moving on to the last, I see only half a minute left. The last issue here is humanitarian asylum. The three incidents here of very, very short duration, two or three days of detention. Yes, he was slapped, he was struck with rods, and on one occasion he had electric shock applied to him. Those are horrible events. That's terrible. However, humanitarian asylum is an exceptional form of relief that is reserved only for the most prominent in several cases, as well as the board in the seminal case of Matter of Chen. What we're saying is that what happened to him was obviously regrettable and terrible, but it does not rise to the level of relief that he should have established eligibility for. In sum, as Judge Ezra pointed out, India is a vast country with over a billion people in it. It is reasonable and safe for a petitioner to relocate. Subject to the court's questions. Thank you very much. Let's put a minute on the clock, please. Thanks, Your Honor. I just wanted to address the current political situation in India. First of all, yes, Asiq Manmohan Singh was the Prime Minister of India when the events in question, the most recent events in question, occurred. However, he was not a frontrunner of the Sharmani Akali Dalman party. He represented the Congress party, which was in opposition to the Sharmani Akali Dalman. Now we have Narendra Modi, the new Prime Minister in India following the 2014 elections. He's someone that the United States government refused a visa to a few years back because of his alleged involvement or lack of taking action when he was head of the state of Gujarat when they had anti-Muslim riots there. His party, the BJP, is in coalition with the Congress party. I believe some of that could be found on the Department of State report for the most recent year. The three little incidents that the respondents cite, I put in quotes, were not little. This court has never stated what exactly the types of torture an individual has to be subject to to be eligible for humanitarian grant of asylum, but I'm pretty sure electric shocks to one's body parts would qualify. You know, although we don't know, unfortunately, maybe fortunately for him, we don't know why the police were looking for him on two different occasions after he left. But that's troublesome, I think, is that it shows a pervasive interest in him that extended, you know. I mean, if the police find out he's gone, he's gone. They go to the house, he's gone. They tell him he's gone. He's out of the country. They don't take that as an answer. They come back yet again looking for him. So it shows that they do have, or somebody has, within the police structure a real interest in this fellow. Thank you, Your Honor. Yes, we agree to that. I have nothing further. Okay, thank you. Thank both sides for your helpful arguments. Singh v. Lynch now submitted for decision.
judges: Ezra, Fletcher, Gould